Case No. 17-1268. Grecian Magnesite Mining, Industrial and Shipping Co. S.A. v. Cmsnr. of Internal Revenue Service Appellate. Ms. Snyder for the appellate, Mr. Miller for the accolade. Good morning. Good morning. May it please the Court. When Grecian redeemed its interest in a United States partnership that conducted all of its operations in the United States, the resulting gain was United States source income and was therefore taxable in the United States. The tax court's contrary decision is erroneous and should be reversed. In fact, under the tax court's ruling, what we have is a situation where income that had absolutely no connection to a foreign country was nevertheless held to be foreign source income. The Internal Revenue Code does not support that anomalous result. Instead, as we've explained in our briefs, the disputed gain in this case was subject to tax under the U.S. Office Rule of Section 865 because the gain was attributable to Grecian's U.S. office. Now, Grecian concedes that it had a U.S. office, essentially Premier, the partnership of which it was a member, and that's because as a partner in Premier, Grecian is considered to be engaged in Premier's trade or business and Premier's U.S. office is also attributed to Grecian. So the remaining question in this case, of course, is whether the disputed gain was attributable to that U.S. office. If the gain was attributable to that office, then it's U.S. source income subject to tax in the United States. So counsel, help me here. The district, the tax court, viewed this case as involving the intersection of everything you're talking about and the law on partnership. What difference does that make here? Not a lot because as you can see from the way the tax court did its analysis, even if it held that an entity approach is more appropriate, which it did, you still need to then go on and apply the income sourcing rules of the code. I think the commissioner's position below is that the aggregate approach applies, and if that's true, then the commissioner would win because all the assets were in the United States. But even if it weren't true, it doesn't matter because even if you apply the entity approach, you still need to then evaluate the sourcing of that partnership interest under the income sourcing rules of the code, which is why on appeal the commissioner has not renewed the arguments about the aggregate or the entity approach because either way the commissioner would prevail under the income sourcing rules of the code. Right. So the way it's teed up for us, I think, is that we assume that the entity approach applies because you haven't contested that, but then you argue that you still win even on the entity approach because of the way the statutory provisions interact. That's right because the question under the statute is whether the U.S. office was a material factor in the production of the disputed gain and whether the office regularly engaged in activities from which the disputed gain was derived. So that's under 864. So can I just – under – the text we start with, I think, is 865E2A. And under that, there's a little bit of a back and forth between your side and the other side on whether attributable to such office modifies income or sale or potentially personal property. There's kind of competing accounts of what that phrase goes to. Now suppose just for argument purposes, and I know you resist this as a premise of your brief, but suppose for argument purposes I thought that attributable to such office goes to sale. If I thought that, then your position is what? We still win. That's what's interesting about this case. And your observation is completely correct that we believe that attributable to goes to income, and there are certain other clues in the statute that tell us that. But the interesting thing here is that even if you accept the premise, which we don't, that what you're looking at is the sale, not the income, the commissioner still prevails for two reasons. First of all, a sale is not an extraordinary event. It can be part of the regular conductive activities of a partnership. Partnerships have to – they have members come, they have members go. It's not that unusual. But even more interestingly in this case is that – so say under the interpretation where attributable to modifies sale, so then the U.S. office would have to be involved in the sale. In this case, the U.S. office was involved in the sale. And we don't think you have to get to this part of the analysis, but if you're looking at it, Premier drafted the redemption agreement and prepared the redemption agreement in the United States. Any communications between the regions? Yes. So can I just ask you this question? So then it sounds like if I thought that attributable to modifies sale, then I get the argument that you still win. Yes. But that argument doesn't have anything to do with the appreciation of the mining operations. Well, right, and that's the correct analysis. So in other words, at least for the purpose of your argument, you buy into the notion that your first order argument is, look, really what's going on here is the value of the asset went way up because the activity that was underlying it became more valuable, and the tax code should account for that. That's kind of your first order submission. That's our argument. Right, but then on this even if prong, which is that if attributable to modifies sale rather than income, then you're no longer relying on the notion that we should be looking at the appreciation of the underlying activity. You're saying that even if we just – we're not looking at that anymore if we're talking about the sale. We're talking about the transaction itself. And then your argument is if we look at the transaction itself, which means we don't look at the appreciation of the underlying stuff, well, then there's still – it's still tied to this office because Premier was involved on one side of the transaction, and if you had to assign the transaction to either the domestic office or a foreign office, you still assign it to the domestic office. But we're not talking about appreciation of the underlying stuff anymore. Right. We're not talking about appreciation of the underlying stuff for that fallback argument, but I would submit that properly read, the focus is actually on the sourcing of the income. These are the income sourcing rules of the code. Which is to get back to your first order argument. Right. I just want to make sure I understand where you are. And I think when Congress put this rule into the code, it was trying to get away from the kind of analyses where you have to look at who signed what way. And instead was turning the focus of the inquiry to the predominant location of the economic activity that generated the income. So Gration's argument is basically, well, we signed the deal in Greece. We had our internal discussions about the deal in Greece. But that's not what the statute looks at. When you look at the material factor in the activities tests, they're looking at the origin of the income, not the formalities of the sale. The question is whether Premier is a material factor in the production of the income and whether it regularly carried on activities of the type from which the income was derived. Derivation, looking at the origin of the income. The statute doesn't say you look at where the seller signed the deal. That's under 864. That's under 864. So under 865, though, 865E2 – no, I'm sorry, 865E3. Yes. Which is how we look through to 864. Right. It says apply the principles of 864. Exactly. That's what tells us to apply the material factor test and the activities test. Right, and in that provision, E3, it speaks in terms of the principles of 864 shall apply in determining whether a taxpayer has an office and whether a sale is attributable to such an office. So it seems like 865E3, by not using the word income and focusing on the word sale, suggests that 865E2A is talking about a sale. I don't think so, partly because 865 itself is an income sourcing rule, and 865A sets out the general rule, and it says income from the sale of personal property and talks about how that income should be sourced. And then 865E, as you mentioned, refers us to the material factor and activity test in 864. And then when you look at 864C5B, which is where those tests are found, it says income, gain, or loss shall not be considered as attributable to a U.S. office unless it's a material factor and regularly carries on activities. So the actual test that we are applying talks about income, gain, or loss and where that is sourced. So I think the proper focus of the analysis is that this was a U.S. business. Premier was a partner in the U.S. business. The business was attributed to it. And all of Premier's activities were conducted in the United States. So the gain that Grecian realized when it redeemed its interest in Premier was just its pro rata share of the appreciation in Premier's business during the years that Grecian held an interest in it. Those two things are inseparable. So, and I mean Premier, as we know, it had no foreign activities. It was headquartered in Pennsylvania. It had mines and other offices in Nevada, Florida, Pennsylvania. There were no foreign activities from which you could decide that this was foreign source income. I think if the task is to look to see why the asset appreciated in value, then you've got a pretty compelling case that everything that happened happened in the U.S. That just begs the question of whether that's the right place to look and whether you should be looking at the activity that caused the asset to appreciate in value or should you just be looking in isolation at the sale transaction. You should be looking at the activities that caused the asset to appreciate in value because that's what Congress was intending to do. Well, the Congress was addressing this manipulable rule about the place of the closing or something, right? Right. Under the title passage rule that had existed previously, you had something that was more easily manipulable because sourcing could be based on formalities as Grecian is basically suggesting we do here. So, I think sourcing was based on where title passed from the seller to the buyer and Congress expressed the concern that that kind of regime was too susceptible of manipulation. And it would be a focused response to that to say, no, let it depend upon the attribution rules for the sale. Well, what Congress said in the legislative history is that source rules should reflect the location of the economic activity generating the income. And, you know, we're not disputing that there are references to sales because we're talking about income from the sale of personal property. But Congress said the location of the economic activity generating the income because anything else is too easy to manipulate. I'd like to finish my thought. I see I may be into my rebuttal time. No, finish your thought. Okay. And I guess, thank you. An illustration of why that doesn't work is because take the facts of this case and assume that Grecian, instead of signing the deal in Greece, let's say it signed the deal when it came to the U.S. to attend one of Premier's board meetings. Well, under their argument, it would have to be U.S. source then because their argument is based on where the seller signed the deal. If the seller signed the deal in the United States, it's U.S. source income. That's not how the income sourcing rules are supposed to work. So, I have one quick question here. I think I know your general argument, but to the extent Grecian is going to speak about the Treasury regulation. Yes. And the language there that talks about, you know, significant contribution to by being essentially contract, it says it is not the adding of substantial value to the property. Right. Grecian's reliance on that regulation and the tax court's reliance on that regulation were essentially an over-extrapolation from a subsection of a regulation that is just not helpful in this context. And it's not helpful for two reasons. First, that regulation applies to certain income from sources without the United States. It presumes that we have foreign source income. And it asks whether that foreign source income has enough connection to the United States to bring it in. And to deem it as being effectively connected to U.S. trade or business. The difference here is that there are no foreign source activities from which this income could be foreign source income. So, you know, the examples in the regulation, you might have situations where you're balancing and you're line drawing. You have licenses for patents outside the United States. But here, it's actually a more straightforward case. You don't need the balancing and line drawing because this was all U.S. activities. And then the second reason the regulation is not really on point is that the subsection of the regulation that talks about value creation not necessarily being relevant, that subsection is specifically addressed to foreign source rents, royalties, certain other properties that are not at issue here. So the regulation is not on point for both of those two reasons. Senator, two small matters. What is your answer to the taxpayer's point about the last antecedent rule? Well, the last antecedent being the sale, not the income. Well, the last antecedent is actually personal property. That's why we're thinking that the last antecedent principle just doesn't really help the analysis in this case. And I think we touched on this in our brief. But what the statute says is that income from any sale of personal property attributed to such office. So the last non-parenthetical words before attributable to are actually personal property. But I think the better way to read the statute is that the phrase – Well, wait a minute. Personal property is – it can't be the operative word here. It's either income from personal property or sale of personal property. Right. Okay? So the latter antecedent is sale of personal property. Personal property is a constant. The variables are income or sale. Right. And income is the word that begins that phrase. It's talking about income from the sale of personal property, which is consistent with the fact that 865 itself provides source rules for the income from the sale of personal property. We're sourcing income under the income sourcing rules to determine whether it's United States source or foreign source income. Well, actually, going back to the purpose of the amendment, it was directed at the sale, not at the income. Right. It was actually directed at income, at attaching U.S. source designation to economic activities that were United States activities. The other point is – the question is this, and I think the tax judge raised this briefly. What would be your position if the gain here were attributable to an increase in, say, the market value of MagnaCite on the day after the purchase of the partnership interest, causing a sale on the second day after the purchase? Right. Well, that wouldn't help Grecian for two reasons. First of all, it's speculative. The evidence in the record – there's a trial testimony that you cited in our brief – was that Grecian – or that Premier, excuse me, the U.S. office expanded its U.S. operations. There's seven years involved here. I'm asking you about the principle that you're using and asking you how does it apply to this one-day rise simply in the market value of the natural resource. Premier would have handled any appreciation or depreciation in the resource from its U.S. office. Any factors relating to the market affected its U.S. business, and its business was all in the United States. So it's not economic activities of Premier then? Well, it is. You're really down to the clerical point, right? No. The Premier would be – Premier's making the bookkeeping entry on this movement of the shares, the partnership interest. Right. Well, any activities that Premier engaged in with respect to the magnesite market were part of its U.S. business. Well, it doesn't engage in any activities. It owns these magnesite resources. The Grecian company becomes the resource value, goes up, and they sell their partnership. Premier doesn't do anything. It's still a U.S. business. The increase – What happens to activities? The word is activities. Well, Premier regularly conducted magnesite mining and processing activities in the United States. Over a period of seven years, but not in my hypothetical. All they did was stand by for a day and read the value from the change in the market. It was still a U.S. business. A partnership interest is really inseparable from the partnership itself. So if the value of the partnership went up for that reason, it's still a U.S. partnership. And, you know, there's no foreign activities that could have made this foreign source income. Except for the general rule of 865, right? Right, but if all you're looking at is where the seller signed the redemption agreement, which is Grecian's argument – Congress got away from that, right? Right. So – but if that's the argument, then basically what they're arguing for is the default rule. They're arguing for sourcing based on the residence of the seller because they were in Greece. And if that were true, then this office rule would serve no purpose in the code. So that's another reason that – No, it would – okay, go ahead. I mean it could still serve a purpose in other contexts. It's just in this particular kind of stylized context. In the partnership context. I don't know if it's just the partnership – at least the partnership context when you're dealing with redemptions. Right. So on that, can I just go in question? So as I understand it, going forward this is no longer an issue because the law changed. And so we're talking about an issue for the IRS looking back. Obviously, it affects this case. How big of an issue is it going – looking backwards? There are three related cases that are pending in the tax court that I believe are being held in abeyance pending the outcome of this case. I cited those on the first page of the statement of related cases in our brief. And there could potentially be administrative refund claims that could be filed if the tax court's decision were affirmed. Because taxpayers paid on the theory that your understanding was correct. Right. And I don't know what the potential impact is, but those could exist. So, yes, it has impact for this case, for some other pending cases, potentially other cases. But Congress has fixed the issue going forward. What does it tell us then about the issue before – or the state of the law before they make this change? If it felt obliged to or advised by the commissioner, perhaps, to make this change. No, because Congress, in the new tax law that was passed at the end of 2017, known as the Tax Cuts and Jobs Act, it basically says in the legislative history that the IRS's longstanding position was consistent with the position that we're taking here. They talked about that 1990-1 revenue ruling and then said, but in 2017 the tax court held otherwise. And so it then changed the law to codify what the commissioner's position had been prior to the decision. And the 2017 decision was the one in this case? Yes, the 2017 decision was the one in this case. So Congress believed that something had gone awry. Well, that's – I mean, it's peculiar then not to just rely on the appellate process, isn't it? To decide that they'll change the law just in case the appellate court gets it wrong. I suppose, or maybe if we didn't appeal, I don't – I guess that was December. Or – right. So Congress doesn't trust the D.C. Circuit? Or, well, maybe Congress needed a revenue raiser in that tax law. I really – I don't know. Let's not get into the politics of it. Right, exactly. All right. Let's hear from Grecian. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Michael Miller for Grecian. I think I'd like to start by saying with respect to the tax law change in 2017, I think Congress wasn't concerned that you'd get it wrong. I think Congress was concerned that you'd get it right. And that's why they needed the change in the law. I'd also like to, after that, address counsel's argument that the legislative history to Section 865 tells you that Congress was trying to accomplish something more than what we think 865 and, in particular, 865E means. Before we go to the legislative history, can I just ask you one question? No, I wouldn't get far. The upshot of your argument is that there undoubtedly was a gain. Your client got a gain because the asset appreciated in value. And then the upshot of your argument is, okay, there was a gain, but we shouldn't have to pay tax on it in the U.S. And was there tax paid on it in Greece? There was. And so it was just treated as – the disputed amount of income was just treated as income for purposes of Grecian tax – Greece tax rules. And I don't know if it's capital gains tax or whatever. I don't know any details beyond the fact that they paid tax increase on the gain. So you don't know anything about credits? I honestly don't know what they do or don't know. I apologize for my inadequacy on Greek law. So the opposing counsel argues that 865E couldn't possibly have been intended to mean as little as we think it means. And they cite the legislative history where Congress expressed a desire to ensure that the sourcing rules tax the place where the economic gain occurs. But with respect, that's a quotation of the legislative history that's rather out of context. Because if you look at other passages from the very same legislative history, you get a more clear idea that Congress had a very specific concern. They were not looking to have a broad look for the economic activity and then tax it rule. They were concerned with transactions where foreign taxpayers had sales offices in the United States. They would use these offices to do all the activities related to sales and then take advantage of something called the title passage rule to pass title to the goods outside the U.S. So under the old law, pre-1986, prior to getting Section 865, there was the abuse, if you will, of using a U.S. sales office by passing title outside the U.S. to avoid U.S. tax on the gain. Why isn't that what happened here? Because creation did not use a U.S. sales office. No, no, no, but I mean the whole point counsel was making. Suppose a redemption agreement had been signed in the U.S.? If it had been signed in the U.S., then the material factor requirement would have been met. There would still be the question of the ordinary course requirement. All right. So of course the bylaws provide, Premier's bylaws provide for this, so it's hardly extraordinary. I'm sorry, Your Honor? The bylaws provide for this, so Premier's bylaws provide for redemption, so I'm not clear how extraordinary it is. But all I want to be clear about is Congress was concerned about manipulation of where a technical action occurs. Understood, Your Honor. Would you agree with that? They were concerned with specifically the technical action of where title passed. They were not concerned with the technical action of where one chose to locate the sales activities. I understand that maybe that was too narrow a focus, and, of course, we had a change in the tax law, at least in the context of sales of partnership interests at the end of last year, which is what happens if Congress feels they haven't gotten it right. They go back to the drawing board. They try again. So you see no analogy between the manipulation under the passage of title and signing of a document on redemption. Your Honor, I can see the broad tax policy analogy of saying that perhaps certain limited and discrete events shouldn't be that sufficient, and maybe the government's preferred value creation approach is better policy. No, this is a question I couldn't in my own mind get clear. If I own something and I decide to sell it, and that it is a U.S. investment, but I have my sale handled by a Grecian firm, then I don't have to pay the U.S. tax. So now, in your case, the case before us, the decision is made that I no longer want to have a partnership interest. And I'm going to sell it, and I'm going to have the signing of that sale agreement in Greece. Isn't that the same thing? I'm just trying to be clear. I understand. I understand the concern with allowing taxpayers to manipulate the source of income by choosing where to locate certain activities. My only answer is that Section 865 was very specifically designed to look at sales activities, and the legislative history confirms that. No, but that's a statutory language you're talking about, any sale. Yes, any sale, and it's clear under the statute, Your Honor, that, again, there's the less clear language of 865E2A and fun discussions for law students about the rule of the last indecedent, which we think clearly points to the sale and not to the gain. But one doesn't have to raise the level of difficulty so high. One can take the easy road and look at Section 865E3, which tells us that we apply certain of the rules of 864, and we do so for two purposes. The first one has to do with whether or not there's a U.S. office, and the second one has to do with whether or not the sale is attributable. And I think it would be rather difficult even for the best lawyers to try to really find an ambiguity in that language in E3, which refers to whether the sale is attributable. If the parties are engaged in discussions about the redemption and suppose they say, okay, you're located in – the Grecian says, okay, you're located in Pennsylvania, I think. Yeah. Pennsylvania is located in Pennsylvania, and we're located in Greece. It would really be helpful to meet face-to-face. Let's pick somewhere in between. And then say, okay, it's easy for me to go to New York. Maybe it's easy for you to go to London. Is the choice between meeting in London and New York to finalize the sale determinative of whether it's attributable to the U.S. for U.S. tax purposes outside the U.S.? Remind the court that there are two components to the test. One is the material factor test, which, by the way, when you look at the version and the regulations, which, of course, we would contend the commissioner is stuck with, as opposed to the little bit more vague language in the code, that language focuses on realization and said, yes, that one, which talks about – focuses on where the activities related to the transaction pursuant to which the gain is recognized, that's something that people can manipulate. You can decide whether or not to conduct your sales through a U.S. office if you have one or elsewhere. That's simply what the law provides. Beyond that, even if Grecian had chose not necessarily as the best tax planning to come to Pennsylvania, you know, for extended negotiations and a big signing ceremony, there's the ordinary course requirement, which, nevertheless, we would argue that because Grecian was engaged through Premier in the business of mining, processing, and selling magnesite, that an ordinary transaction in the conflict of that business isn't the sale of the partnership interest. But that's a separate requirement. But, yes, there's a certain degree of – Why isn't it just kind of – it's always possible with a partnership that a partnership interest can be sailed. That's just part – it's part of engaging in an economic enterprise of any kind. It's just part of the enterprise that – Sure. I don't know that it's an ordinary course in terms of the conduct of the business, which, again, the business is the underlying business conducted by Premier as opposed to, well, the disposition of the partnership interest is certainly something that everyone knows could happen at some point. I would contend that's not part of the conduct of the business itself, much less an ordinary course transaction. But, of course, you never need to get there once it's understood that what Section 865 is focusing on are sales that are attributable to a U.S. office. Why? I thought that if this – I thought you do need to get there even if it's focusing on sales. The government needs to get there because they need for both the material factor requirement and the ordinary course requirement to be satisfied. Right. So you still need to go to 864 even if you win the day on whether it's attributable to a U.S. office. Yes, absolutely, and perhaps that's a good segue to one point that I wanted to make, which is the government is very emphatic that the 864 rules deal with foreign source income, which with the appropriate U.S. connection could nevertheless be effectively connected, whereas Section 865E is a sourcing rule, a rule that determines whether or not gain is U.S. source or foreign source in the first instance. The government, I think, takes that as sort of a license to not have to apply the 864 rules, including the example, which seems very, very clear, the example in the 864 regulations about being disinterested in value creation. The example involves a foreign corporation that developed or purchased, but let's assume developed, patents in the U.S. Under the government's view, all of the value would have been created within the U.S., and yet because the licensing transactions took place outside the U.S., the example concludes that the material factor requirement isn't met. One would have expected that if value creation were so important to the government, at least in the context of 864, that the example would have come out the other way. But the example did not care that the patents were developed in the U.S. The example cared that the licensing transactions took place outside the U.S. Let me just add that Section 865E3 tells us that we apply the principles of Section 864, so 864C5 in particular. So while the government argues that we shouldn't pay so much attention to all of these detailed and taxpayer-friendly rules in Section 864, in particular the 864 regulations, what the government really wants is to apply different principles. But 865E3 tells us to apply the same principles that appear in 864. The statute that said X, and then it said, but don't apply X. I mean, that's sort of odd. I mean, I guess from our perspective, the 864 rules are very clear about focusing on the transaction pursuant to which the gain is realized, and the example in particular. So the whole effort to focus on income sourcing was a useless act by Congress. Well, I know the government has emphasized repeatedly that 865 is an income sourcing rule, so why do we focus on the sale? I don't know why there's any inconsistency there. Congress chose to craft an income sourcing rule that looks to whether or not the sale is attributable. If Congress made a mistake, then they can fix it, and, you know, perhaps they did that last year. But it's very difficult to read 865, I think, particularly in light of the more clear language in E3, which tells you consult these other rules to determine if the sale is attributable to a U.S. office. If the government has never explained, then I think they'll find it difficult to explain why on earth Congress would have written those words if they didn't mean for the sale to have to be attributable to a U.S. office. The upshot of your position, and I'm not saying this necessarily means you're wrong, but as I understand it, the upshot of your position is that with partnership redemptions, it doesn't matter. There's never going to be a case where a foreign entity that owns a partnership interest in a U.S. company will have a sale attributable to the U.S. office. Okay. I would say that's not necessarily true. One group of taxpayers that was very interested in this case, and they're not so interested since the law changed, but were funds, investment funds that have offices in New York and Boston, and they own interest in many, many different partnerships, and they sell or redeem those interests from a U.S. office. Those funds with foreign partners, we're trying to figure out how much value they can get out of the Grecian case, given that we can point to the fact that Grecian's activities related to the sale occur outside the U.S. The activities of these funds occur within the U.S. But I thought you were placing some emphasis on the regularly carries-on activities of the type. There's that as well. For such a fund, and by the way, the regularly carries-on activities language is from the Code, and while I don't dismiss the Code, the formulation in the regulations is different, which talks about the gain being realized in the ordinary course, and the government, I think, is stuck with their regulations until Treasury changes it. I realize they may like the language of the Code better. So depending upon the particular fund, they may have a weaker or perhaps an untenable argument as to whether or not they buy and sell partnership interests in the ordinary course of their business conducted through the U.S. office. It's a very different set of factual circumstances from Grecian's. So it's a company whose business is actually transacting these shares, as opposed to a company whose business is the underlying activity. Arguably, or they may have both. They may also have a business as a fund of dealing in shares or trading in shares, whereas Grecian didn't have any such business either directly or through Premier or otherwise. So this would be, for instance, master limited partnerships and pipelines and so on? I think that's correct. They're certainly partnerships that are funds. I confess I've never known exactly what an MLP is. Thank you. Just to respond to that last point, I think what Grecian's counsel is suggesting is that the U.S. office rule could have an application if there were an entity that was basically in the business of buying and selling. But if that's what Congress meant when it wrote the U.S. office rule, there would have been a much easier way to write that rule, or a much easier way to write 864 also. It could have said that income from a sale of personal property is attributable to the U.S. office if the U.S. office materially participated in the sale. But that's not what it said. It said that the U.S. office needs to be a material factor in the production of the income gain or loss and that it regularly carry on activities of the type from which the income gain or loss is derived. So it did not circumscribe the statute in the way that Grecian's counsel suggests. I would also respond to the discussion regarding the examples under the 864 regulation. I think that when you – and, of course, our premise is that it's off point because this is a regulation about foreign source income and only a certain type of foreign source income at that. But when you look at the regulations, you see that there – the examples, there's substantial activity outside the United States. The first example, licenses for use of patents outside of the United States negotiated by offices outside the United States, services performed by employees outside the United States. And the second one pertains to the distribution of films solely outside the United States where foreign employees negotiated the licenses and provided services. So I think – Did you deal with the patent licensing example? Right. That was the first example. Licenses for patents that are used outside the United States, negotiated outside of the United States, and there were services performed by employees outside the United States. And so the question is, there's a U.S. business office, and where do you draw the line? How do you do the balancing? In this case, it's not necessary to do that kind of line drawing and balancing because all of Premier's activities were located in the United States. Premier was considered to have conducted those activities. It was considered to have maintained the U.S. office. So the gain in this case is U.S. source income taxable in the United States. Does the court have any further questions? Thank you. Thank you. Case under advisory. Stand, please.
judges: Rogers, Srinivasan, Ginsburg